# Third District Court of Appeal

## State of Florida

Opinion filed July 8, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D26-0129
Lower Tribunal No. 24-3627-CA-01
_____

**Victor Manuel Rocha,**
Petitioner,

vs.

**Ofelia Acevedo Paya, etc.,**
Respondent.

On Petition for Writ of Certiorari from the Circuit Court for Miami-Dade County, Reemberto Diaz, Judge.

do Campo & Thornton, P.A., and John A. Thornton, for petitioner.

Continental PLLC, and Carlos Trujillo, Jesus M. Suarez, and Amy M. Bowers, for respondent.

Before LOGUE, LINDSEY, and LOBREE, JJ.

LINDSEY, J.

Victor Manuel Rocha petitions this Court for a writ of certiorari to quash an order compelling discovery sought by Ofelia Acevedo Paya. He contends that responding to the discovery would require him to divulge confidential information and thereby breach his plea agreement with the United States government. Rocha, however, would have this Court accept his assertion that the requested information is classified. That is insufficient. Rocha is not the arbiter of whether information is classified in this case. That determination belongs to the United States government. Although Rocha seeks to invoke his plea agreement as a shield against discovery, he has not utilized the agreement's pre-publication review procedure in objecting to the requested discovery. If Rocha believes that responding would disclose confidential information, the plea agreement provides a mechanism to determine whether disclosure is permissible. Until that process is invoked and completed, any claimed harm remains speculative and too remote to support certiorari jurisdiction. We therefore dismiss the petition.

## BACKGROUND

### A. Rocha's Criminal Case

Rocha served the Republic of Cuba as a covert agent within Cuba's intelligence apparatus, the General Directorate of Intelligence ("DGI"). To further Cuba's objectives, Rocha held various positions within the United

2

States Department of State from 1981 until August 2002. During that time, he had access to extensive nonpublic, classified, and sensitive information and allegedly provided such information to the Cuban government. In November 2022, an undercover federal agent ("UC"), posing as a covert DGI representative, contacted Rocha. Following that initial contact, the UC met with Rocha on three occasions. During those meetings, Rocha stated that he remained a foreign agent acting on behalf of the Republic of Cuba. He described the United States as an "enemy" and reaffirmed his allegiance to Cuba. In December 2023, the United States Department of State Diplomatic Security Service ("DSS") conducted a voluntary interview of Rocha. Initially, Rocha denied having contacted an individual matching the UC's description. Once DSS informed him that it possessed reliable information confirming multiple meetings with the UC, Rocha terminated the interview. He was indicted soon after.

### B. The Plea Agreement and the Government's Notice of Restitution

In April 2024, Rocha plead guilty in federal court to committing conspiracy to act as an agent of a foreign government,[1] and to defrauding

---

[1] 18 U.S.C. § 371 (2023).

the United States while acting as an illegal agent of a foreign government.[2]

In his written plea agreement with the United States, Rocha agreed to abide

by his obligation not to divulge any confidential information acquired by his

employment and illegal activities as a foreign agent:

> 5. The defendant understands and acknowledges his continuing legal obligation to refrain from the unauthorized oral or written disclosure of information belonging to the United States Government or acquired by virtue of his United States Government employment or derived from the activities which resulted in his arrest. The defendant further understands and acknowledges that, in connection with his employment by the DOS, he entered into certain agreements proscribing the unauthorized disclosure of classified information, confidential information, and other information acquired as a part of his performance of his official duties or acquired from the files of the intelligence community. Even though the defendant is no longer a DOS employee, he acknowledges his continuing duties and obligations under these agreements, which are hereby incorporated by reference. In addition, notwithstanding any prior agreement, the defendant agrees that he will never disclose to any person or entity, except to persons or entities specifically authorized by the United States Government, any classified information, any confidential United States Government information (whether or not such

---

[2] 18 U.S.C. § 951 (2023).

information is formally classified), and all other information acquired as part of his employment.

The plea agreement also contained a provision that Rocha remained liable for restitution, if any, in connection with the underlying charges of his conviction, specifically Counts 1 and 2 of the indictment pursuant to the Mandatory Victims Restitution Act.[3] Further, Paragraph 6 of the Plea Agreement sets forth the pre-publication procedure to be used if Rocha divulged information about his time as both a Cuban spy and United States executive employee.

Two months later, the United States filed its Notice Regarding Restitution in the District Court for the Southern District of Florida stating that "no restitution is due." According to the filing, the causal link between Rocha's crimes and any "quantifiable physical or pecuniary harm" was too speculative to justify any restitution award. However, the United States conceded that "nothing in the plea agreement or any aspect of [Rocha's] prosecution precludes any person from seeking damages or other relief from [Rocha] in any other forum." The government's notice concluded by stating, "nothing about the absence of restitution under the MVRA precludes any

---

[3] 18 U.S.C. § 3663 (2024).

individual from pursuing a legitimate civil claim against [Rocha] or otherwise lawfully seeking to vindicate his or her rights."

## C. Rocha's Civil Case

Soon after, Ofelia Acevedo, on behalf of her deceased husband and Cuban civil rights humanitarian, Oswaldo Paya Sardinas, filed a civil action against Rocha which underlies this appeal. Acevedo filed claims against Rocha for Civil Conspiracy, and for Facilitating and Furthering Terrorism contrary to the Florida Anti-Terrorism Act, § 772.13(1), Florida Statutes (2025).

The decedent, Paya, was purportedly assassinated by the Cuban Government on July 22, 2012.[4] At that time, Rocha was an advisor to the Commander of the United States Southern Command ("USSOUTHCOM"). Acevedo alleges in her complaint that Rocha conspired with the Cuban government to orchestrate Paya's assassination by obtaining critical, confidential information about him via his advisory role with USSOUTHCOM.

---

[4] Acevedo's complaint acknowledges that the Cuban government denies involvement in Paya's death. However, the Inter-American Commission on Human Rights published a report on the incident concluding that the Cuban government indeed orchestrated Paya's assassination. See Admissibility and Merits Report, Case 14.196, Inter-Am Comm'n H.R., Report No. 83/23, OEA/Ser.L/V/II., doc. 92 (2023).

Acevedo subsequently served discovery on Rocha, including the three interrogatories pertinent to the Petition, asking Rocha to disclose the substance of discussions with the United States in the federal case:

> 13. Identify by date all instances in which You met with representatives of the United States Government for the purpose of providing information as contemplated by your cooperation agreement in United States v. Rocha, Case No. 1:23-CR-20464-BB(1) (S.D. Fla. 2023).
>
> 14. Identify all individuals or entities You provided information about to the representatives of the United States Government in connection with your cooperation agreement in United States v. Rocha, Case No. 1:23-CR-20464-BB(1) (S.D. Fla. 2023).
>
> 15. Identify the substance of all information provided to representatives of the United States government in connection with your cooperation agreement in United States v. Rocha, Case No. 1:23-CR-20464-BB(1) (S.D. Fla. 2023).

Acevedo also requested "[a]ll Documents and Communications provided to the United States Government in connection with your cooperation agreement in United States v. Rocha, Case No. 1:23-CR-20464-BB(1) (S.D. Fla. 2023)."

7

Rocha objected to each of these discovery requests, specifically asserting that disclosure of such information would force Rocha to breach his plea agreement with the United States:

> Answer: Objection. The Plea Agreement entered into by Mr. Rocha with the government of the United States prevents revelation. In that agreement Mr. Rocha agreed that he would "never disclose to any person or entity, except to persons or entities specifically authorized by the United States Government, any classified information, [or] any confidential United States Government information (whether or not such information is formally classified) …" *See* United States v. Victor Manuel Rocha, 1:23-CR-20464-BLOOM, DE 34, p. 3, ¶ 5.

Rocha also filed a motion for a protective order requesting a stay of "further discovery, soliciting the input of the [Federal] Government concerning whether and how this matter can be maintained without the revelation of state secrets or Government information [. . .] to ensure that Rocha not be required to reveal state secrets." The United States never responded with their position on the discovery request.[5] And because the United States never asserted the state secret privilege, no privilege could be

---

[5] On April 6, 2026, this Court ordered the parties to file a joint notice of service of the date of oral argument, attaching a copy the Petition, Response, Reply, and appendices on the United States Attorney's Office for the Southern District of Florida. The parties complied. The United States has not sought to intervene in this action as of the date of this opinion.

applied to the pertinent discovery requests to protect Rocha from the discovery process. See, e.g. United States v. Reynolds, 345 U.S. 1, 7-8 (1953) (establishing that only the government may assert a privilege to prevent the disclosure of classified documents). Indeed, the trial court denied Rocha's motion for a protective order.

Still, Rocha maintained his original objections and refused to respond to Acevedo's discovery. In turn, Acevedo filed a motion to overrule objections and compel discovery after the trial court denied the original protective order. Rocha responded that Acevedo's motion "seeks to compel [Rocha] to answer irrelevant questions about details of his debriefings with the U.S. government, when to do so would violate his plea agreement and put him in legal jeopardy." So Rocha did not assert a state secret privilege and only asserted the discovery was irrelevant, overly burdensome, and would violate his plea agreement.

The trial court conducted a hearing on the motion. Acevedo argued that the motion should be granted for the same reasons it denied the motion for protective order—the United States never responded to Rocha's request for input, and so no state secret privilege could be raised. Rocha countered that while the earlier motion for protective order attempted to assert that privilege, "these objections are based upon [. . .] the relevance of the

9

material, and the harm to [Rocha]" by disclosing confidential, information; Rocha did not seek to reassert the state secrets privilege.

The trial court noted that litigation had been ongoing for two years, and despite attempts to get the United States involved, the Parties "have yet to hear from the U.S. Attorney's Office or any federal agency speak on behalf of [Rocha] and whatever deals he made with the government." In its ruling, the trial court found that it had "previously ruled on [Rocha's] objections," overruled them again, and ordered Rocha to answer Acevedo's discovery requests. In directly addressing Rocha's counsel at the hearing, the trial court advised:

> If I didn't already made [sic] it abundantly clear to you, I'm doing so now. The objections are overruled and I'm ordering your client to answer the discovery.

The trial court then explained that if they choose, the United States can intercede in this procedure and "can intervene if they want to." An order reflecting the court's ruling was entered the following day (the "Order Compelling Discovery") requiring Rocha to provide complete responses to the contested discovery requests. He refused to do so.

After that order was entered, Rocha gave a deposition during which Rocha's criminal defense counsel admitted she did not know what

information discussed at her client's debriefing with the United States was classified or confidential:

> [Rocha's Counsel]: I don't know exactly what's been classified and what's not been classified. It's not been classified as confidential, but I was not made privy to what was classified or what was not, so I'm protecting all of that information.

Rocha filed this Petition for Writ of Certiorari shortly thereafter.

## STANDARD OF REVIEW

To be entitled to certiorari relief, a petitioner must establish: (1) a departure from the essential requirements of the law; (2) resulting in material injury for the remainder of the case; (3) that cannot be corrected on post-judgment appeal. See Blades v. State, Dept. of Revenue ex rel. Stewart, 943 So. 2d 300, 302 (Fla. 3d DCA 2006); Bd. of Regents of State v. Snyder, 826 So. 2d 382, 387 (Fla. 2d DCA 2002).

The second and third elements are "sometimes referred to as irreparable harm." Nader v. Fla. Dep't of Highway Safety & Motor Vehicles, 87 So. 3d 712, 721 (Fla. 2012). "The establishment of irreparable harm is a condition precedent to invoking certiorari jurisdiction." Stockinger v. Zeilberger, 152 So. 3d 71, 73 (Fla. 3d DCA 2014). As to the first element, "[t]he required 'departure from the essential requirements of law' means

11

something far beyond legal error." Sucart v. Office of Comm'r, 129 So. 3d 1112, 1115 (Fla. 3d DCA 2013) (quotation omitted). "It means an inherent illegality or irregularity, an abuse of judicial power, an act of judicial tyranny perpetrated with disregard of procedural requirements, resulting in a gross miscarriage of justice." Id.

## ANALYSIS

Rocha seeks a writ of certiorari quashing the Order Compelling Discovery. Rocha argues we have jurisdiction to review the Order because it threatens irreparable harm that cannot be remedied on appeal. Specifically, Rocha asserts if he reveals the information, he will suffer irreparable harm by breaching the plea agreement and committing federal crimes under 18 U.S.C. § 798(a)(3) and (4). He also asserts the discovery is overbroad and not limited to relevant material—the death of Paya.

### A. Plea Agreement

Paragraph 6 of the Plea Agreement delineates the pre-publication procedure should Rocha at any time produce information regarding his time as a Cuban spy and United States executive employee:

> ***Should the defendant, at any time***, author or participate in the creation of any book, writing, article, film, documentary, or other production, or ***otherwise provide information for purposes of publication or dissemination***, including but not limited to information provided through interviews with writers

12

> or representatives of any media organization or entity, ***the defendant hereby agrees to first submit in a timely fashion such*** book, writing, article, film, documentary, or ***other production, or information, to the Federal Bureau of Investigation (FBI) and the DOS for timely pre-publication review*** and deletion of information which, in the discretion of the FBI and/or DOS, should not be published or disseminated on any grounds, including but not limited to national security interests.

(emphasis added).

The record contains no indication that Rocha attempted to provide information responsive to the requests to the FBI and the DOS for pre-publication review. Indeed, Rocha's objections to the discovery requests invoked the Plea Agreement as a complete bar to revealing any confidential information. And Rocha's motion for protective order sought a stay so it could seek advice from the federal government in order to proceed without revealing state secrets. Yet neither filing mentioned the pre-publication procedure nor reflected any submission of information responsive to the discovery requests to the FBI or the DOS.

Rocha would have us take his word that the information requested is classified. We cannot do so. For one, Rocha's counsel admitted she did not know what information discussed at the debriefing was classified and that

"[i]t's not been classified as confidential."[6]   But, more importantly, the privilege over classified and sensitive government information belongs exclusively to the United States government.  Reynolds, 345 U.S. at 7 ("The [state secrets privilege] belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party."); see also Alexander v. Trump, 413 So. 3d 795, 798 (Fla. 4th DCA 2025) ("While government officials may claim the immunities and protections provided to them in court proceedings, the law is clear that such privileges are not available to third parties to claim, nor may such privileges be asserted by others on the officials' behalf."), review denied, No. SC2025-0922, 2025 WL 2448990 (Fla. Aug. 26, 2025).

That said, the procedure for pre-publication review was never presented to the trial court.  Therefore, it cannot be said that the Order Compelling Discovery forecloses Rocha from invoking that procedure in responding to the requests.  If Rocha believes he cannot answer because

---

[6] Without a designation of what is classified by a United States Government agency, we would be hard pressed to conclude that if Rocha revealed such information, it constitutes a crime under 18 U.S.C. § 798(a)(3) and (4).  While the statute prohibits the willful dissemination of classified information to unauthorized individuals, the term "classified information" under the statute means information "which, at the time of a violation of this section, is, for reasons of national security, **specifically designated by a United States Government Agency** for limited or restricted dissemination or distribution." 18 U.S.C. § 798(b) (2026) (emphasis added).

14

doing so would divulge confidential information, a pre-publication review process exists for him to follow and obtain that determination. Until then, any injury remains speculative and too remote to invoke this Court's certiorari jurisdiction. See Venezia v. Wells Fargo Bank, 258 So. 3d 539, 541 (Fla. 3d DCA 2018) ("Irreparable harm cannot be established on speculation."); Mayport Hous. P'ship, Ltd. v. Albani, 244 So. 3d 1176, 1177–78 (Fla. 1st DCA 2018) ("Generally speaking, irreparable harm cannot be speculative, but must be real and ascertainable.").

## B. Overbreadth

Generally, "overbreadth is not a sufficient basis for certiorari relief if the discovery request appears reasonably calculated to lead to the discovery of admissible evidence." Oakley Transp. Group, Inc. v. Shinault, 341 So. 3d 440, 442 (Fla. 3d DCA 2022). Rocha relies on the exception to this rule. Certiorari is appropriate in cases where a discovery order effectively grants *carte blanche* to irrelevant discovery. See Allstate Ins. Co. v. Langston, 655 So. 2d 91, 95 (Fla. 1995); Publix Supermarkets, Inc. v. Santos, 118 So. 3d 317, 319 (Fla. 3d DCA 2013). This is not the exceptional case. Without resolving the merits of the underlying action, the information sought has a nexus to the subject matter of the civil conspiracy action as plead.

15

Acevedo's complaint alleges that Rocha entered into a conspiracy with the Cuban government and that conspiracy resulted in the death of Paya. Rocha's plea agreement arose from his participation in that conspiracy. Thus, the information provided in connection with the plea agreement offers a direct window into the scope and membership of the conspiracy. These requests therefore bear a direct nexus to the subject matter of the pending civil conspiracy action. Cf. Langston, 655 So. 2d at 95 (finding discovery request for insurance company's internal procedural memos regarding handling of uninsured motorist claims during prior twelve months lacked nexus to plaintiff's standard uninsured motorist action, which did not allege bad faith or unfair claim practices).

The fact that Rocha knows no one with information about the allegations, has had no communication about Mr. Paya or the Christian Liberation Movement, and had no communications with anyone in the Cuban government in the two years surrounding Paya is not dispositive. [7] Our jurisprudence does not limit the relevant inquiry to his direct involvement in

---

[7] That is assuming these assertions in Rocha's deposition testimony are true. Indeed, Acevedo need not take Rocha at his word. Discovery is the mechanism by which a party tests the veracity of these assertions. See, e.g., Bliss v. Brodsky, 604 So. 2d 923, 924 (Fla. 2d DCA 1992) ("Even though this discovery may lead to information useful primarily as collateral impeachment, it is appropriate discovery . . . .").

16

Paya's death.  See Amersham Enterprises, Inc. v. Hakim-Daccach, 333 So. 3d 289, 296 (Fla. 3d DCA 2022) (emphasis added) ("[E]ach conspirator is liable for and bound by the act and declaration of each and all of the conspirators done or made in furtherance of the conspiracy **even if not present at the time**."); Logan v. Morgan, Lewis & Bockius LLP, 350 So. 3d 404, 412 (Fla. 2d DCA 2022) ("[A] conspirator need not take part in the planning, inception, or successful conclusion of a conspiracy."); R.J. Reynolds Tobacco Co. v. Neff, 325 So. 3d 872, 884 (Fla. 4th DCA 2021) ("A co-conspirator need not have caused any direct injury to the claimant.").

This case is distinguishable from the *carte blanche* discovery in Santos, on which Rocha primarily relies, that required production of countless irrelevant incident reports from all Publix stores statewide, despite the applicable statute limiting the relevant inquiry to the establishment where the incident occurred.  See 118 So. 3d at 319.  Accordingly, we do not view the Order Compelling Discovery as affording Acevedo *carte blanche* access to irrelevant discovery.

## CONCLUSION

In conclusion, we have no authority, in granting a petition for a writ of certiorari, to direct the trial court to take any specific action other than to quash the order of which Rocha complains.  See Marriott v. Fisher &

17

<u>Davidson, LLP</u>, 299 So. 3d 511, 513 (Fla. 3d DCA 2020).  But without a threshold showing of irreparable harm, we cannot do so.  The petition for certiorari is dismissed.

Dismissed.